WILLIAM G. SHATTUCK, and others, Appellants from decision of COUNTY COMMISSIONERS.

York. Opinion April 14, 1882.

*Ways. Elliot Bridge Company.*

The charter of the Elliot Bridge Company (Private Laws of 1879, c. 128,) contains in section 6 a provision in these words, "Provided no way shall at any time hereafter be located, or existing way altered, leading from said Bridge towards York beach in the town of South Berwick, which shall be for the necessary convenience of said company unless the entire cost and expense of building and maintaining such new way, or altering such way shall be defrayed by said company during the continuance and maintenance of said toll bridge," *Held:*

1. That this provision is not to be construed as prohibiting the location of any way required by common convenience and necessity.

2. Ways that are located upon the face of the earth in accordance with such description which necessarily contribute to the increase of the income to be derived from the bridge come within the meaning of the phrase "for the necessary convenience of said company."

3. The question of whether a way comes within such description is within the jurisdiction in the first instance of the county commissioners if it is a highway, or if it is a town way with the municipal officers of the town as one of the matters to be adjudicated upon in locating the way, subject to appeal to court and to be finally passed upon by a committee. It is not sufficient that the committee adjudge the way to be of common convenience and necessity, but they must also adjudge after due notice to and hearing of the bridge company whether the way will be a necessary convenience to that company.

4. It is not material that the bridge company do not ask for the way or that none of the petitioners for a way are owners in the bridge.

ON EXCEPTIONS.

Appeal from county commissioners.
The opinion states the case and the material facts.

*Nathaniel Hobbs*, for the petitioners.

If the court is to receive evidence as to the matter requested in said objections, it will also appear that said "Elliot Bridge Company" have already expended several hundred dollars in building a way from said new bridge to the highway in said South Berwick, a distance of about three-fourths of one mile, which act on the part of said bridge company is in accordance with the intention of the legislature, and the meaning of the provision of § 6, c. 128, private and special laws of 1879.

If the way is for the necessary convenience of said company, the county commissioners have no authority to lay it out. *Commonwealth* v. *Cambridge*, 7 Mass. 166.

The "essential question is whether public necessity and common convenience require the laying out or alteration." *Park* v. *Boston*, 8 Pick. 218; *Gay* v. *Bradstreet*, 49 Maine, 580; R. S., c. 18, § 4.

*George C. Yeaton*, for the appellees, cited: *McCulloch* v. *Maryland*, 4 Wheat. 316; *Montague* v. *Richardson*, 24 Conn. 338; *Stuyvesant* v. *The Mayor*, 6 Cow. 588; *Jerome* v. *Ross*, 7 John's Ch. 315; *Hays* v. *Briggs*, 3 Pitts. 504; *The Ship Fortitude*, 3 Sum. 228; *The Bank Herald*, 8 Ben. 409; *The Amelie*, 6 Wall. 18; *The Plymouth Rock*, 7 Ben. 448; *Curtis* v. *Leavitt*, 15 N. Y. G. 168; *Morris* v. *State*, 31 Ind. 189; *Hitchcock* v. *Holmes*, 43 Conn. 528; *M. and St. P. R. R. Co.* v. *Crawford Co.* 29 Wis. 116.

DANFORTH, J.    By c. 128 of the private laws of 1879, the legis-
lature granted a charter to the Elliot Bridge Company, giving it
the right to build "a bridge over the Salmon Falls River, between
the town of South Berwick in this state and the town of Rollins-
ford, in the state of New Hampshire," and to take such rates of
toll for the use thereof, as the county commissioners for York
county might establish.

Section 6 of the act reads as follows, viz : "Provided, no way
shall at any time hereafter, be located, or existing way altered,
leading from said bridge towards York Beach, within the town
of South Berwick, which shall be for the necessary convenience
of said company, unless the entire cost and expense of building
and maintaining such new way, or altering such way, shall be
defrayed by said company during the continuance. and mainten-
ance of said toll bridge."

The company have accepted their charter with this condition
in it and have erected and so far as appears are now maintaining
their bridge, taking toll for the use of it.    It is therefore bound
by its terms whatever may be a fair and reasonable interpretation
of them.

The language of the proviso is explicit and includes all ways
within the town of South Berwick leading from said bridge
towards York Beach, "which shall be for the necessary con-
venience of said company."

It appears that certain persons petitioned the county commis-
sioners, representing "that the road leading from the new bridge
across the Salmon Falls River, though the towns of South Ber-
wick, etc. to a point in York, . . . is narrow, hilly and
very circuitous, and needs to be widened, straightened and in
some places to be new located."  What was the action of the
commissioners on this petition, the case does not show except as
we may infer it from the report of the committee and the
arguments of counsel.    But it does appear that a committee was
appointed upon an appeal and that they have made a report in
which it is adjudged, "that as the common convenience and
necessity require the *location* as prayed for in the original peti-
tion, the judgment of said county commissioners on the aforesaid

petition, should be in the whole reversed." The acceptance of this report was the question before the court. The appellees filed written objections to its acceptance, alleging in substance and offering to prove that the way prayed for comes within the proviso of the charter and asking that the report may be amended so as to show that fact, or judgment be entered, upon condition that the way be built or altered at the expense of the bridge company. The appellants have filed a written answer denying these allegations and claiming that the report should be accepted notwithstanding the objections and "without receiving evidence upon the matter therein alleged." This claim was overruled by the presiding justice and it is upon exceptions to this ruling that the case is before us.

It is not apparent how, in the present state of this case, an acceptance of this report is to be of any avail to the appellants. The petition as we have it in the argument of counsel, and no doubt correctly, asks that a way already located "be widened, straightened and *in some places to be new located.*" We may infer that the commissioners refused the prayer of the petition. The committee reverse this and say that the *location* should be made as prayed for. As there is no particular location prayed. for it may be difficult for the commissioners to ascertain and carry out the judgment of the appellate court if one should be entered upon that report. But this question is not raised by the objections filed. It is simply whether the way described in the petition comes within the condition of the charter and whether evidence is admissible to show it; with perhaps the additional question whether the condition asked for can be inserted in the judgment.

It is evident that this last cannot be done in the present state of the case. Upon that question the interests of the bridge company are deeply involved. It does not appear that they have been notified or in any way made a party, which is clearly necessary before judgment can be entered against them.

It is also clear that the appellees should have an opportunity to be heard upon that matter. Their interests are involved. The

condition was undoubtedly inserted in the charter for their protection. It does not appear that they have been heard, nor does it appear that there has been any adjudication upon that question. They ask to be heard upon it now and upon the question of the acceptance of the report. In the absence of any record evidence, showing that their rights have been passed upon by the proper tribunal, it is certainly proper that they should be heard far enough to show whether such an adjudication has been had, before the report is accepted, or before judgment is entered, unless the law gives them an opportunity before some tribunal in the future; or can this court upon a hearing as to the judgment to be rendered adjudicate upon the rights of all parties involved in this question? Here then is a preliminary question of jurisdiction necessarily involved.

This court is evidently not the place for such hearing and adjudication. It can only hear the parties before it. It does not originate the process; its jurisdiction is only appellate. No parties can be added after it comes into this court, the notices are already given and by the court from which the appeal is made. When the report of the committee comes in, it can only be accepted, rejected or recommitted. No alteration can be made in it, for if there were it would not be the judgment of the committee as it is required to be, and if it is accepted, judgment must follow in accordance with its terms. Still there must be some tribunal to decide questions like this in case of a disagreement of parties. Shall it be in the tribunal, locating the way to be exercised at the time, and as a part of the process of location? or when the question of building and paying the expense is raised? It must clearly be the one or the other, and in either case it will belong to the same tribunal, that is, with the county commissioners, if as in this case it is a highway, or if a town way with the municipal officers of the town. It would seem necessarily to follow that jurisdiction in this case, of the question under consideration, must be with the county commissioners subject to the right of appeal, perhaps to be exercised at the time of laying out, and as a part of that process, one of the things to be then adjudicated upon, or subsequently when the expense of construction is to be defrayed.

The former proposition is evidently that which is contemplated by law. The statute contemplates that such a way may be located. The prohibition is conditional and not absolute. No other provision, except the general one for the location of ways is made, no other tribunal for that purpose is established. The condition is attached to the way. It is not a question as to whether the way shall be located, but is incident to and connected with the location. It is important that this question should be adjudicated upon in the beginning, not only that it may be known who is to bear the expense of building, but also that of maintaining. The law never contemplated that there should be a question to be settled by the courts as often as the necessity for repairs may come up, and it may be as claimed by both parties that if the road should be located upon this report, it would be conclusive upon the town, and upon it would devolve the responsibility for building and repairs, with the consequent liability for damages arising from defects. Hence the act says plainly, no such road shall be located, unless the company shall bear these burdens, and the law cannot be complied with unless the location and imposition of these burdens are concurrent acts.

There are two propositions involved in the proviso to the charter. The description of the way upon the face of the earth and the necessary convenience to the company. The first would need no evidence, but must be apparent upon the face of the petition; the latter may be more difficult of solution and might require evidence. From the suggestions already made it follows that when a way is prayed for, leading from said bridge towards York beach, within South Berwick, the bridge company should be notified, and if the location or alteration is found to be of common convenience and necessity, it should then be considered and adjudicated upon, whether it is or is not "a necessary convenience" to the bridge company. If it is so found, the law is peremptory that it shall not be located, unless the company shall defray the expenses of building and maintaining. If not so found it may be located, and built and maintained at the expense of the town.

Whether the county commissioners did so adjudicate, and that was a part of the judgment reversed by the committee, does not

appear. If it should so appear upon a hearing, the rights of the parties may perhaps be preserved without a recommittal. If there was no hearing and adjudication upon that point, it would seem necessary to make such a disposition of the case as will secure one.

It is, however, claimed in behalf of the petitioners that the report of the committee should be accepted without a further hearing, because,

1. If the way by its location is brought within the description named in the condition, still it is not for the "necessary convenience" of said bridge company. This may be true. But the appellees assert the contrary. It is, therefore, a question of fact which must be settled by the proper tribunal. The reasons given in the answer "because said way is not necessary or indispensable to the maintenance or operations of said bridge and is not petitioned for by said company, nor in its behalf," are hardly sufficient to prevent a hearing. The way may not be indispensable to the operations of said bridge, and yet it may be a " necessary convenience," and this is all the law requires. It does not even require that it should be a convenience and necessity. If it did that, the term necessity could have no other meaning than that attached to it in the location of ways which must be of common convenience and necessity. Here the term necessary is not applied to the bridge at all. It is an adjective and qualifies convenience and that alone. The bridge was built for the benefit of the company, that it might make a profit from it. This profit is the convenience of the company. It may be an awkward use of the word, but no other meaning can be attached to it in the connection in which it is found. If then the way is so located that it necessarily will increase the profits of the company arising from the use of the bridge, it is "for the necessary convenience of said company." Nor is it necessary that the company should petition or ask for said way, nor is it material that any of the petitioners are or are not owners or interested in the bridge. Nothing of the kind is incorporated into the proviso, nor will any such fact change or modify its meaning.

2. The fact that the committee have adjudged the way to be of common convenience and necessity, is not conclusive upon

this question. It may be that if the way should be located without any further adjudication, it may be conclusive upon the town's liability to build and maintain it. But the fact that it is of common convenience and necessity, is not inconsistent with its being "a necessary convenience" to the bridge. On the other hand the two would be very likely to coincide. If the way leads from the bridge and is so located that the most or all the travel passing over it, must also pass over the bridge, the very fact that it is of common convenience and necessity, would be very pertinent proof that it would also be a necessary convenience to said company. It may be too, that the building of the bridge may be the material, if not the only cause why this way, located as it is, is of common convenience and necessity. Having an outlet at and over the bridge, that taken away might probably make a very material difference in the amount of travel over it, which would be an important fact bearing upon the question of its public utility. It is possible that it may be conclusive in this respect, and that the legislature seeing this, thought it more in accordance with justice, that a way made necessary to the public convenience by the bridge, and at the same time necessarily contributing materially to the income derived from the bridge, should be paid for by the bridge company, rather than by the town.

3. It may be, and probably is true that the legislature did not intend to deprive the citizens of York county of a way, which their common convenience and necessity require. It may be that if the statute requires that construction, it might be declared unconstitutional, as excepting a portion of the citizens from the benefits of a general law. But it does not contemplate that such a way shall not be located. It only provides in a certain contingency how the expenses of its construction shall be defrayed. This question, however, is not now before us, and can only be raised by the bridge company when it is a party, refusing to pay the expenses of construction on the ground that the statute leaves it optional upon its part to pay or refuse. It will be sufficient to consider that question when the company refuses to perform the condition of a charter granted for its benefit, and by it accepted and acted upon.

The exceptions in this case present the simple question as to whether any evidence should be received upon the matters alleged in the objections filed, or whether the report of the committee should be accepted without a further hearing. From the foregoing suggestions, it is apparent that injustice may be done unless there is a hearing. What was the evidence offered does not appear, nor does it appear that any was received, although the ruling was in favor of it. It is certain the ruling did not dispose of the case, and it is, therefore, prematurely here. We have discussed these questions because they have been argued, and may render some assistance in a further hearing of them either at *nisi prius*, or before the tribunal whose duty it is to adjudicate upon the location of the way, and upon the questions raised by the provisions in the bridge charter. As this court can do nothing but accept, reject, or recommit the report, it is clear that such evidence and such only can be received as will enable it to adopt such one of these alternatives as may best protect the legal rights of the parties, but these rights must be ascertained in accordance with the foregoing suggestions, by the locating tribunal, with the proper parties before it and upon the proper evidence.

*Exceptions dismissed.*

APPLETON, C. J., WALTON, BARROWS, VIRGIN and SYMONDS, JJ., concurred.