# Chicago, Indianapolis and Louisville Railway Company v. Baugh et al.

[No. 21,649. Filed March 31, 1911.]

1. RAILROADS.—*Eminent Domain.*—*Stock Pens.*—*Public Use.*—Railroads are required, not only to transport stock, but also to provide means for loading and unloading such stock, and the appropriation of land therefor is for a public use. pp. 421, 422.

2. RAILROADS.—*Stations.*—*Shipments of Stock.*—*Public Use.*—The number of people who will probably ship stock from a certain station, and the comparative nearness of such station to another at which shipments may be made, are not conclusive that the appropriation of land for a stock pen at such station is not for a public use. p. 421.

3. RAILROADS.—*Stations.*—*Location.* — *Shipping Stock.* — Railroad companies in the absence of statute, may exercise some discretion as to the location of their stations for receiving stock for shipment. pp. 422, 427.

4. RAILROADS.—*Condemnation.* — *Stock Pens.* — *Statutes.* — Under subdivision 3, §5195 Burns 1908, §3903 R. S. 1881, providing that a railroad company has the power "to purchase, and, by voluntary grants and donations, receive and take possession of, hold, and use all such lands and real estate and other property as may be necessary for the construction and maintenance of its railroad stations, depots, and other accommodations necessary to accomplish the objects for which the corporation is created," a railroad company may condemn lands upon which to erect suitable stock pens for the receipt and shipment of stock, such pens constituting "accommodations necessary" to the discharge of its duty as a common carrier of stock. pp. 422, 427.

5. EMINENT DOMAIN. — *Necessity for Exercise of.* — *Legislative Question.*—Where the legislature has granted the authority to condemn land, the courts cannot inquire into the necessity therefor. p. 424.

6. RAILROADS.—*Rights of Way.*—*Width.*—*Subsequent Increase of.*—Where the right of way appropriated by a railroad company is less than that authorized by statute, the company may subsequently appropriate a sufficient strip to make its right of way as wide as that permitted by the statute. p. 424.

7. RAILROADS.—*Appropriation of Land for Stock Pens.*—"*Necessary.*"—In order to condemn land for the purpose of constructing a stock pen for the receipt and shipment of stock, a railroad company need not show an indispensable necessity therefor, evi-

dence that such accommodations are reasonably proper, suitable and useful, being sufficient to show that such accommodations are "necessary" within the meaning of the statute (§5195 Burns 1908, subd. 3, §3903 R. S. 1881). p. 425.

From Tippecanoe Circuit Court; *Richard P. DeHart,* Judge.

Action by the Chicago, Indianapolis and Louisville Railway Company against Samuel L. Baugh and others. From a judgment for defendants, plaintiff appeals. *Reversed.*

*E. C. Field, H. R. Kurrie* and *John F. McHugh,* for appellant.
*Stuart, Hammond & Simms,* for appellees.

MYERS, C. J.—Appellant filed its complaint in the Tippecanoe Circuit Court, alleging, among other things, that it has heretofore appropriated, at the point where it seeks appropriation in this proceeding, a strip of land sixty feet in width, and that with the appropriation here sought, the total width of the property appropriated by plaintiff will be six rods; that it desires to use the land described in the complaint, east of and adjoining that heretofore acquired, and on which its main line is operated, "as the location for its stock pens at said station of Raubs; that it carries from said station of Raubs as a common carrier a great deal of live stock; that it is necessary for plaintiff to maintain at said station stock pens and other facilities to enable shippers to load and unload live stock at such station; that for many years it has occupied the land sought to be appropriated in the maintenance of stock pens and other facilities, under a lease from the owner, which has expired, and the lessors have notified said company that the lease will not be renewed; that it is necessary for plaintiff to appropriate this land for such use, and that there is no other property at this place which plaintiff can appropriate; that the land is occupied by it in the discharge of its duties as a public carrier, and has

been so used for many years.   The complaint refers to §§929–940, 5195, 5236 Burns 1908, Acts 1905 p. 59, §§1–9, 11, 12, Acts 1907 p. 306, §§3903, 3907 R. S. 1881, as authority.

To this complaint appellees, as the alleged owners of the property, filed various objections, denying the right of appropriation in appellant.   It is admitted, however, by counsel for appellees that the real question in the case is whether appellant has the right, by the exercise of the power of eminent domain, to appropriate real estate, outside its right of way heretofore taken, for the sole purpose of locating and maintaining stock pens.

The question is presented upon overruling a motion for a new trial, upon an agreed statement of facts, and by an assignment of error in sustaining the objections of appellees to the appointment of appraisers.

Appellant owes a public duty to provide means for loading and unloading stock, and such provision is for the public benefit and in discharge of a public duty, and the use

1.   is essentially a public one.   *Westport Stone Co.* v. *Thomas* (1911), *ante*, 319, and cases cited.

It is not a question of how many persons use the facilities; and upon the same analogy it is immaterial that other facilities exist a few miles away.   It is not

2.   a question of degree of public utility that determines the character of the use, but of choice by the carrier in furnishing greater or better facilities for the public use, and is determined by the right of the public to use it without discrimination, and not by the extent to which it may be used, or by the fact that other equal facilities exist at more remote distances.   Equal facilities are as much required at one place as at another.   When a station is established the duty to provide facilities and accept and transport freight is imperative.   §5271 Burns 1908, §3925 R. S. 1881; *Chicago, etc., R. Co.* v. *Southern Ind. R. Co.* (1906), 38 Ind. App. 234.

Railroad companies are required to carry live stock, and,

as an incident to that duty and requirement, to furnish
facilities reasonably sufficient for loading and un-
1.  loading. *Prather* v. *Jeffersonville, etc., R. Co.* (1875),
52 Ind. 16; *Covington Stock Yards Co.* v. *Keith* (1891),
139 U. S. 128, 11 Sup. Ct. 461, 35 L. Ed. 73; *Kalamazoo,
etc., Bus Co.* v. *Sootsma* (1890), 84 Mich. 194, 47 N. W. 667,
10 L. R. A. 819, 22 Am. St. 693; *Owen & McKinney* v.
*Louisville, etc., R. Co.* (1888), 87 Ky. 626, 9 S. W. 698;
*Oregon, etc., R. Co.* v. *Ilwaco R., etc., Co.* (1892), 51 Fed. 611;
*Indian River Steam Boat Co.* v. *East Coast Trans. Co.* (1891),
28 Fla. 387, 10 South. 480, 29 Am. St. 258; *Keith* v. *Ken-
tucky Cent. R. Co.* (1887), 1 Inters. Com. Rep. 189; *McCul-
lough* v. *Wabash, etc., R. Co.* (1889), 34 Mo. App. 23.

In the absence of statutory provision it must be apparent
that the carrier is allowed some discretion as to where it
will locate stations and the facilities necessary to be
3.  provided. *Chicago, etc., R. Co.* v. *Southern Ind. R.
Co., supra; Northern Pac. R. Co.* v. *Washington Ter-
ritory* (1892), 142 U. S. 492, 12 Sup. Ct. 283, 35 L. Ed. 1092;
*People* v. *New York, etc., R. Co.* (1887), 104 N. Y. 58, 9 N.
E. 856, 58 Am. Rep. 484; *Florida, etc., R. Co.* v. *State, ex rel.*
(1893), 31 Fla. 482, 13 South. 103, 20 L. R. A. 419, 34 Am.
St. 30; *State, ex rel.,* v. *Kansas City, etc., R. Co.* (1899), 51
La. Ann. 200, 25 South. 126; *State* v. *Des Moines, etc., R.
Co.* (1893), 87 Iowa 644, 54 N. W. 461; *People, ex rel.,* v.
*Chicago, etc., R. Co.* (1889), 130 Ill. 175, 22 N. E. 857; *Mobile,
etc., R. Co.* v. *People* (1890), 132 Ill. 559, 24 N. E. 643, 22
Am. St. 556; *State, ex rel.,* v. *New Orleans, etc., R. Co.* (1890),
42 La. Ann. 138, 7 South. 226; *Rea* v. *Mobile, etc., R. Co.*
(1897), 7 Inters. Com. Rep. 43.

It is not seriously controverted by appellees that this is
true, but they insist that there is no right of condemnation
for such purposes, and that property can be acquired
4.  for that purpose only by donation or contract. This
contention is based upon §§5192, 5195 Burns 1908,
§§3900, 3903 R. S. 1881 and upon the further ground that

under subdivisions three, four and nine of §5195, *supra*, relied upon by appellant as conferring the power, the location of stock pens is a convenience and not a necessity. Section 5192, *supra*, and subdivision two of §5195, *supra*, as we understand them, only enlarge the contracting power of railroads with respect to incidents of the business, and makes permissive the receipt of grants and donations of land and aid to be held and used exclusively for railway purposes.

In the case of *Protzman* v. *Indianapolis, etc., R. Co.* (1857), 9 Ind. 467, 68 Am. Dec. 650, it was held that a railway company as a common carrier had the implied power to acquire such facilities and accomodations for carrying on the business and the objects of the charter or franchise as are the inseparable incidents of the operation of a railway and the management of its business, that is, such as are necessary in its operation and the discharge of its public duties. *Prather* v. *Western Union Tel. Co.* (1883), 89 Ind. 501; *Pittsburgh, etc., R. Co.* v. *Shaw* (1888), 36 Am. and Eng. R. Cas. 453; *Marietta, etc., Co.* v. *Western Union Tel. Co.* (1882), 38 Ohio St. 24; *Western Union Tel. Co.* v. *Rich* (1878), 19 Kan. 517, 27 Am. Rep. 159; *London, etc., R. Co.* v. *Price & Son* (1883), 13 Am. and Eng. R. Cas. 128; *Chicago, etc., R. Co.* v. *People, ex rel.* (1870), 56 Ill. 365, 8 Am. Rep. 690; *Reagan* v. *St. Louis, etc., R. Co.* (1887), 93 Mo. 348, 6 S. W. 371, 3 Am. St. 542; *Cleveland, etc., R. Co.* v. *Bartram* (1860), 11 Ohio St. 457; *Linton* v. *Sharpsburg Bridge Co.* (1856), 1 Grant Cas. (Pa.) 414; *Slatten* v. *Des Moines, etc., R. Co.* (1870), 29 Iowa 148, 4 Am. Rep. 205; *State* v. *Commissioners, etc.* (1852), 23 N. J. L. 510, 57 Am. Dec. 409; *Vermont Cent. R. Co.* v. *Town of Burlington* (1855), 28 Vt. 193; *Nashville, etc., R. Co.* v. *Cowardin* (1850), 11 Humph. \*347.

Subdivision three of §5195, *supra*, provides that railroad companies shall have power "to purchase, and, by voluntary grants and donations, receive and take, and, by its officers, engineers, surveyors, and agents, enter upon, take possession

of, hold, and use all such lands and real estate and other property as may be necessary for the construction and maintenance of its railroad stations, depots, and other accommodations necessary to accomplish the objects for which the corporation is created." Subdivision nine confers the power "to erect and maintain all necessary and convenient buildings, stations, depots, fixtures and machinery for the accommodation and use of their passengers, freight and business, and obtain and hold the lands necessary therefor." Stock pens may not strictly be classified as buildings, stations, depots or fixtures, though they may be strongly allied to the latter, but they are certainly accommodations in the handling and shipping of stock. What are we to understand by the words "accommodations necessary"? and who is to be the judge as to what are "accommodations necessary"? It is not a matter of doubt that in some cases courts and commissions thereto delegated have the power to compel the constructing or furnishing of accommodations in the public interest, such as proper waiting rooms or stations, housing for the protection of property until delivered, and can require the establishing of stations and stopping places, and regulate the running of trains, upon the theory that having undertaken the duties of carriers they must discharge those duties with some regard to the public interest and

5. necessities. Where the legislature has given authority to condemn for public use, the courts cannot inquire into the question of necessity. *Vandalia Coal Co. v. Indianapolis, etc., R. Co.* (1907), 168 Ind. 144; *Richland School Tp. v. Overmyer* (1905), 164 Ind. 382; *Speck v. Kenoyer* (1905), 164 Ind. 431; 2 Elliott, Railroads (2d ed.) §973.

It has also been held that where the width of the right of way taken for a railway was less than the width authorized by statute to be taken, the power to take the full

6. statutory width is not exhausted. *Smith v. Cleveland, etc., R. Co.* (1908), 170 Ind. 382; *Peck v. Louisville, etc., R. Co.* (1885), 101 Ind. 366, 371; *Prather v. Jeffer-*

*sonville, etc., R. Co., supra,* at p. 42; *Chicago, etc., R. Co.* v. *Chicago, etc., R. Co.* (1904), 211 Ill. 352, 360, 71 N. E. 1017.

7.

Indispensable necessity is not the test for determining whether the taking of property is necessary to erect and maintain stock pens as an incident to the loading and unloading of stock in the business of operating railroads, under a statute authorizing the acquisition of real estate for "stations, depots, and other accommodations necessary to accomplish the objects for which the corporation is created." It cannot be questioned that stock pens are accommodations necessary in the loading and unloading of live stock. Necessary accommodations are such as are reasonably proper, suitable and useful for the purposes sought, and are not limited to an absolute or indispensable necessity. They are such as are a convenience to the public sufficient to warrant the expense of making them; such as are requisite to accomplish the particular purpose, where the public convenience being equally served, the benefits to the latter exceed the probable injuries to the landowner, and are suitable, proper, needful and adapted to accomplish the purposes sought. The word "necessary" has not a fixed meaning or character peculiar to itself, but is flexible and relative. It is an adjective expressing degree, and may express mere convenience, or that which is indispensable, or an absolute physical necessity. It may mean something which in order to accomplish a given object cannot be dispensed with, or it may mean something reasonably useful and proper, and of greater or lesser benefit or convenience, and its force and meaning must be determined with relation to the particular object sought. It is a relative and comparative term, depending upon its application to the object sought, the character of and reasons for the convenience as public or private, and its adaptation to the public needs or public convenience, and especially is this true where it is based upon a condition or state of affairs in which the public are directly interested, and as to which a public duty is imposed

upon a public instrumentality, as a railroad. *McCulloch* v. *Maryland* (1819), 4 Wheat. *316, 4 L. Ed. 579; *Butte, etc., R. Co.* v. *Montana, etc., R. Co.* (1895), 16 Mont. 504, 41 Pac. 232, 31 L. R. A. 298, 50 Am. St. 508; *Crawford* v. *Longstreet* (1881), 43 N. J. L. 325; *Getchell & Martin, etc., Mfg. Co.* v. *Des Moines, etc., R. Co.* (1901), 115 Iowa 734, 87 N. W. 670; *Aurora, etc., R. Co.* v. *Harvey* (1899), 178 Ill. 477, 53 N. E. 331; *Jerome* v. *Ross* (1823), 7 Johns. Ch. *315; *Commissioners, etc.,* v. *Moesta* (1892), 91 Mich. 149, 51 N. W. 903; *St. Louis, etc., R. Co.* v. *Trustees, etc.* (1867), 43 Ill. 303; *Mobile, etc., R. Co.* v. *Alabama, etc., R. Co.* (1888), 87 Ala. 501, 6 South. 404; *In re Rhode Island, etc., R. Co.* (1901), 22 R. I. 457, 48 Atl. 591, 52 L. R. A. 879; *Hays* v. *Briggs* (1893), 3 Pittsb. Rep. (Pa.) 504; *Knevals* v. *Florida, etc., R. Co.* (1894), 66 Fed. 224, 13 C. C. A. 410; *State, ex rel.,* v. *Hancock* (1871), 35 N. J. L. 537; *Alabama, etc., R. Co.* v. *Odeneal* (1895), 73 Miss. 34, 19 South. 202; *State, ex rel.,* v. *Mayor, etc.* (1873), 36 N. J. L. 166; *Chalcraft* v. *Louisville, etc., R. Co.* (1885), 113 Ill. 86; *Ellerman* v. *Chicago, etc., Stock-Yards Co.* (1891), 49 N. J. Eq. 217, 23 Atl. 287; *Towns* v. *Pratt* (1856), 33 N. H. 345, 66 Am. Dec. 726; *Metropolitan Bank* v. *Van Dyck* (1863), 27 N. Y. 400; *Buck* v. *Seymour* (1878), 46 Conn. 156; *Kelly* v. *People's Transportation Co.* (1870), 3 Or. 189; *Mayor, etc.,* v. *Chesapeake, etc., Tel. Co.* (1901), 92 Md. 692, 48 Atl. 465; *Chambers* v. *City of St. Louis* (1860), 29 Mo. 543; *Moale* v. *Cutting* (1882), 59 Md. 510; *Cotten* v. *County Com., etc.* (1856), 6 Fla. 610; *Milwaukee, etc., R. Co.* v. *Board, etc.* (1871), 29 Wis. 116; *Chicago, etc., R. Co.* v. *Bayfield County* (1894), 87 Wis. 188, 58 N. W. 245; *Shattuck* v. *Commissioners, etc.* (1882), 73 Me. 318; *Boston, etc., R. Co.* v. *Coffin* (1882), 50 Conn. 150; *The Justices* v. *Griffin, etc., Plank Road Co.* (1851), 9 Ga. 475; *Board, etc.,* v. *Isenberg* (1900), 10 Okla. 378, 61 Pac. 1067; *State, ex rel.,* v. *Inhabitants, etc.* (1896), 59 N. J. L. 94, 34 Atl. 1060; *Detroit, etc., Plank Road Co.* v. *City of*

*Detroit* (1890), 81 Mich. 562, 46 N. W. 12; 2 Elliott, Railroads (2d ed.) §954.

In 2 Lewis, Eminent Domain (3d ed.) §599, it is said: "In all such cases, where the authority is to take property necessary for the purpose, the necessity of taking particular property for a particular purpose is a judicial one, upon which the owner is entitled to be heard," citing many cases. In 2 Lewis, Eminent Domain (3d ed.) §596, it is said: "But if a use is public, it is never a valid objection that the use could be accomplished without the aid of the power."

The maintenance of stock pens is not only adapted to, and useful in the loading and unloading of stock, but may well be declared an indispensable necessity to the public, and is certainly highly accommodative of public convenience and interest, and comes clearly within the power of railroads to acquire "other accommodations necessary," and one without which the handling of stock— one of the purposes of its incorporation and in which the public is vitally concerned—might be seriously affected or practically defeated. The statute is not to be given so strict a construction as to defeat the legislative intent, which must be assumed to have embraced the duties of railways to carry live stock, and to provide the proper facilities for doing so. The power to condemn is not of course a power without limitations. It could not be invoked to condemn land out of all proportion to all necessities. As we have said, some discretion must be allowed to the railway companies in determining what are the needs both of the public and of its business. *Buck* v. *Seymour, supra; Crawford* v. *Longstreet, supra; Shattuck* v. *Commissioners, etc., supra.*

Our conclusions lead to a reversal of this judgment, and it is so ordered, with directions to the court below to sustain appellant's motion for a new trial, and for further proceedings not inconsistent with this opinion.