## KAY COUNTY, EXCISE BOARD v. ATCHISON, T. & S. F. RY. CO.

No. 29057.   June 27, 1939.

J. H. Hill, County Attorney, and R. O. Wilson, Attorney for Board of Education, for plaintiff in error.

Rainey, Flynn, Green & Anderson and Gordon F. Rainey, for defendant in error.

WELCH, V. C. J. The excise board approved the annual budget of this independent school district, including an item appropriated to buy band uniforms. The protest here involved questions the legality of that appropriation, urging that such item of appropriation is for an unauthorized and therefore illegal purpose. The only question presented is whether such an appropriation within the general fund may be legally made for such purposes.

Section 1, article 2, chapter 34, S. L. 1936-37, amendatory of section 6867, O. S. 1931, 70 Okla. St. Ann. sec. 189, provides in material part as follows:

"Section 6867: The board of education shall have power * * * to make rules and regulations governing the board and the schools and school system of their respective districts; to maintain and operate a complete public school system of such character as the board of education shall deem best suited to the needs of the school districts; * * * to incur all expenses, within the limitations provided by law, necessary to carry out and fulfill all powers herein granted. * * *"

It is not denied that the board of education here has included within its public school system a complete course in instrumental music which is now and has been for several years taught and given to the pupils of the separate schools within the district, for whose use this appropriation was made. The board deems it necessary and best suited to the needs of these pupils who are receiving instructions in band music that they be equipped with suitable uniforms in such studies.

The assertion that the board is authorized by law to conduct such instructions in its public school system is not denied, but it is

insisted that the uniforms are not a necessary part of such instruction, and protestant further says that there is no specific statute for the purchase of same.

We think it is apparent from the above legislative enactment that the Legislature has conferred broad powers upon boards of education of independent school districts. Its powers to conduct a public school system of such character as it "shall deem best suited to the needs of the school districts" would thereunder seem to be extensive and far-reaching. There is evident purpose of strong recognition of local self-government and responsibility. There can be little question that thereunder all expenses within legal limits, necessary to carry out such powers, may be incurred and paid from its public school funds. It remains only for us to determine whether or not the band uniforms are "necessary" for instruction in band music as the same is taught in that school and by the method deemed best suited to the needs of that school district by such board.

"The word 'necessary' must be considered in the connection in which it is used, as it is a word susceptible of various meanings. It may import absolute physical necessity or inevitability, or it may import that which is only convenient, useful, appropriate, suitable, proper, or conducive to the end sought. Rexroth v. Holloway, 90 N. E. 87, 45 Ind. App. 36." 3 Words and Phrases (2d Series) 535.

"The word 'necessary' has no fixed meaning or character peculiar to itself. It is flexible and relative. It is an adjective expressing degrees, and may express mere convenience or that which is indispensable or an absolute physical necessity. It may mean something which in the accomplishment of a given object cannot be dispensed with, or it may mean something reasonably useful and proper, and of greater or lesser benefit or convenience, and its force and meaning must be determined with relation to the particular object sought, and is a relative and comparative term, depending upon its application to the object sought, the character of and reasons for the convenience as public or private, and its adaptation to the public needs or public convenience, and especially is this true where it is based upon a condition or state of affairs in which the public are directly interested, and as to which a public duty is imposed upon a public instrumentality, as a railroad. Chicago I. & L. Ry. Co. v. Baugh, 94 N. E. 571, 573, 175 Ind. 419." 3 Words & Phrases (2d Series) 536.

"When it comes to determining what is 'necessary' for the conduct of the business and transaction of the affairs for which a corporation has been chartered, it must, of course, be understood that what is meant is a due and profitable prosecution of its lawful purposes; that the 'necessity' contemplated is a relative one having reference to economy, convenience, efficiency, and success; and that some latitude is to be allowed to the discretion of the corporation itself in deciding what, from time to time, is or is not, in that sense, necessary. Folk v. State Capital Savings & Loan Ass'n. 63 Atl. 1013, 1016, 214 P. 529." 3 Words & Phrases (2d Series) 536.

"In determining what is reasonably necessary in making a public improvement, and what the authorities in charge are therefore empowered to do, the word 'necessary' does not mean indispensable, but includes whatever is appropriate to render the improvement effective. Meriwether v. Board of Directors of St. Francis Levee District, 165 Fed. 317, 319, 91 C. C. A. 285." 3. Words & Phrases (2d Series) 537.

"The word 'necessary,' as used in Rev. St. c. 34, § 26, making it the duty of the county board of each county to provide a suitable courthouse when 'necessary and the finances of the county will justify it,' is not to be interpreted as referring to such measures as are absolutely and indispensably necessary, but as including all appropriate means, which are conducive or are adapted to the end to be accomplished, and which in the judgment of the board will most advantageously effect it. Coles County v. Goehring, 70 N. E. 610, 617, 209 Ill. 142." 3 Words & Phrases (2d Series) 537.

"The word 'necessary,' in acts involving the right of eminent domain, does not mean 'absolutely necessary or indispensable,' but 'reasonably necessary' to secure the end in view. Sayre v. City of Orange (N. J.) 67 Atl. 933". 3 Words & Phrases (2d Series) 538.

"'Necessary accommodations,' to maintain which a carrier can condemn lands, are such as are reasonably suitable and useful, and are not limited to those which are absolutely necessary. Chicago, I. & L. Ry. Co. v. Baugh, 94 N. E. 571, 573, 175 Ind. 419." 3 Words & Phrases (2d Series) 538.

"County Law (Consol. Laws 1919, c. 11) sec. 240, subd. 1, provides that the expenses necessarily incurred by the district attorney in criminal actions or proceedings arising in his own county are a county charge. Held to invest a district attorney with much discretion in determining what expenses are necessary; the term 'necessary expenses' being a flexible one, to be applied in the district attorney's discretion, depending on the circumstances of each particular case. People ex rel. Koetteritz v. Board of Sup'rs of Herkimer County, 132 N. Y. Supp. 808, 810, 148 App. Div. 392." 3 Words & Phrases (2d Series) 541.

The vesting of broad powers and discretion in the board of education of independent

school districts by the 1937 act, above quoted, points readily to the thought that the Legislature did not intend to so restrict such board as to limit expenses only for things indispensable to the maintenance and operation of its public school system; and we conclude that such expenses as are convenient, useful, appropriate, suitable, proper, or conducive to the desired ends of the general program, and to the conduct of such school system, are authorized to be incurred thereunder, in the discretion of the board, unless otherwise restricted by law.

In Brooks v. Shannon, 184 Okla. 255, 86 P.2d 792, we held:

"Where boards of education in independent school districts act within the limits of the power conferred upon them, their discretion cannot be interfered with by injunction, unless their action is so clearly unreasonable as to amount to an oppressive and manifest abuse of discretion; and this general rule applies, although the discretion may be widely exercised."

We cannot say, under the facts here, that the band uniforms sought to be purchased are not convenient, useful, appropriate, suitable, proper, and conducive to the ends sought in the teaching of band music.

While it is true that no statute expressly mentions band uniforms as a legitimate item for the expenditure of school funds, we do not deem that essential in view of the general powers of the board. Our statutes have not undertaken to list in minute detail the multitude of items which must be purchased, and which may be legally purchased, and used in the many activities of the conducting of the various departments and courses of a high school.

Protestant relies strongly upon Protest of Chicago, R. I. & P. Ry. Co., 164 Okla. 239, 25 P.2d 690; and Chicago, R. I. & P. Ry. Co. v. Excise Board of Oklahoma County, 168 Okla. 428, 33 P.2d 1081.

These cases were decided before the enactment of the above quoted legislation. Furthermore, it was then found that the items of appropriation therein involved had no proper relation to the conduct of the public school system maintained in that district. We cannot follow protestant to the conclusion that those decisions should properly direct us to the sustaining of this protest.

Our attention is directed to the case of Union Graded School District No. 5, Creek County, v. Ford, 169 Okla. 410, 37 P.2d 258, but we find it not in point.

The protest here can only be sustained upon the theory and conclusion that the expenditure purpose involved is so lacking in reasonable and proper relation to the conduct of the school system of this district as to be beyond the power of the board.

Decisions cited from other states do not deal with the identical type of appropriation, nor with statutes identical with ours. and we deem it unnecessary to discuss them further.

Upon the principle that this purpose of expenditure is included within the general authority of the board of this district, we hold that the appropriation was not for an unauthorized or illegal purpose. If this board, within all limits of levy, is able to pay all its other school operating expenses, and in addition thereto, is able to buy band uniforms, and obtains an appropriation therefor in reasonable amount, then expenditure therefor, within the specific appropriation, is legitimate and legal.

It follows that the protest was erroneously sustained. The judgment of the Court of Tax Review is reversed, and the protest is denied.

BAYLESS, C. J., and CORN, DAVISON, and DANNER, JJ., concur. RILEY, OSBORN, GIBSON, and HURST, JJ., dissent.

GIBSON, J. (dissenting). The majority opinion holds that section 1, art. 2, chap. 34, S. L. 1936-1937, amendatory of section 6867, O. S. 1931, 70 Okla. Stat. Ann. § 189, vests in the board of education of independent school districts broad powers and discretion in the maintenance and operation of its school system; that it does not restrict such board to incurring expenses only for things indispensable to such maintenance and operation and concludes that "such expenses as are convenient, useful, appropriate, suitable, proper, or conducive to the desired ends of the general program, and to the conduct of such school system, are authorized to be incurred thereunder, in the discretion of the board, unless otherwise restricted by law." I cannot agree that the Legislature intended to confer on boards of education of independent school districts such unfettered discretion and arbitrary power in the expenditure of public funds.

The general rule is that municipal corporations possess such powers as are expressly conferred by statute, those fairly implied from those expressly given, and those that are necessarily incidental or indispensable to the exercise of the granted powers.

The statute under consideration is as follows:

"The board of education shall have power to elect their own officers, except as otherwise provided by law; to make rules and regulations governing the board and the schools and school system of their respective districts; to maintain and operate a complete public school system of such character as the board of education shall deem best suited to the needs of the school districts; to provide, when deemed advisable, cafeterias, or other eating accommodations; thrift banks or other facilities for the teaching and practices of thrift and economy; book stores: print shops; to incur all expenses, within the limitations provided by law, necessary to carry out and fulfill all powers herein granted; to contract with and fix the compensation of all officers, servants and employees and exercise sole control over all of the schools and all school property of the district."

The powers expressly granted are obvious. There is no express provision for the employment of superintendents, teachers, janitors, etc., but all reasonable persons would agree that the services of such employees are necessarily incidental and indispensable to the operation of the public schools. Many additional services and numerous school supplies can undoubtedly be provided for legally by the school board under powers fairly implied from the express power "to maintain and operate a complete public school system."

The statute empowers the school board "to provide, when deemed advisable, cafeterials, or other eating accommodations," but it does not follow that the board may furnish, gratis, to the pupils in the schools three meals a day. The board also has power to provide print shops, but it has no power, express or implied, to provide special clothing for the pupils working therein. The board undoubtedly had discretion to determine what courses shall be taught in its schools, but they have no power to furnish free school books to the pupils pursuing those courses of study.

So, in the instant case, while the school board could legally exercise its discretionary implied power and provide instruction in band music, it had no more power to expend public funds to clothe the pupils in uniform dress merely because it was "convenient, useful, appropriate, suitable, proper, or conducive to the desired ends of the general program" than it had to furnish food and warm clothing to any underprivileged pupils in the school because thereby they might derive greater benefits from instruction in reading or arithmetic. If it could clothe these band music pupils in uniforms at public expense, it could with equal reason mount them on bay horses at public expense.

The members of the school board are trustees for the taxpaying public in expending public funds in the maintenance and operation of the public schools. They must find authority in some statute before they can legally appropriate and spend such funds. In re Protest of Chicago, R. I. & P. Ry. Co., 164 Okla. 239, 25 P.2d 690. That is not to say, however, that the various items for which funds may be appropriated and expended must be specifically named in the statute.

The majority opinion holds in effect that by the statute under consideration the school board is empowered to expend its funds for any purposes which the board, in its discretion, deems useful or appropriate, unless prohibited by some other statute. The holding is contrary to our former decisions, as well as those of the other states.

I am authorized to say that Justices RILEY, OSBORN, and HURST join in this dissent.