Blessing v. Granville Township School District

*Norman L. Levin,* for plaintiff.

*Fetterolf & Brugler,* for defendants.

LEHMAN, P. J., June 26, 1957.—On June 13, 1957, plaintiff filed his complaint in mandamus seeking reinstatement as a member of the school board of the Granville Township School District. Immediately thereafter, counsel for plaintiff moved for summary judgment in accordance with Pa. R. C. P. 1098. When contacted by us, counsel for defendants strongly op-

posed said motion and requested a hearing. Counsel for plaintiff on June 19, 1957, filed an amendment to paragraph 12 of the complaint and added paragraph 22 thereto. On said date both counsel signed a stipulation that by reason of the exigency of the case, defendants agreed to file their answer to the complaint on or before June 20, 1957, that trial by jury be dispensed with and that the case be tried before us on June 24, 1957.

While the testimony adduced at the trial consumed the entire day, there are comparatively few issues of fact. We make the following

*Findings of Fact*

1. Plaintiff, Harry Blessing, Jr., was a duly elected and qualified director of the School District of Granville Township, having been elected to such office by the popular vote of the electorate of said township in a regular election in November of 1953 for a six-year term.

2. The other duly elected and qualified directors of said board are John R. Snyder, Chester W. Bailor, Lee R. Fisher and Harold R. Kepner.

3. For the past year or more the members of said school board have been torn with dissension over the problem of a possible jointure with either the Rothrock Joint School District, comprising the school districts of McVeytown Borough and Bratton and Oliver Townships, on the one hand, or the Lewistown School District, on the other hand.

4. On March 29, 1957, plaintiff and the said Harold R. Kepner instituted an equity action against the same defendants as those in the instant case seeking to enjoin, inter alia, said defendants from effecting a jointure with the Rothrock Joint School District or any of its member districts until such time as the matter has been adequately considered with regard to the

best interests of the residents, taxpayers and school children. of the district.

5. As a result of said equity action the relationship between plaintiff and the said Harold R. Kepner, on the one hand, and the said John R. Snyder, Chester W. Bailor and Lee R. Fisher, on the other hand, became very strained.

6. The said John R. Snyder, as president of the said school board and after privately consulting with the said Chester W. Bailor and Lee R. Fisher, directed the secretary of the board to prepare and mail to each board member a written notice that the postponed regular meeting of the board, originally scheduled to be held May 8, 1957, would be held as a special meeting on May 14, 1957, for the purpose, inter alia, of giving "to Mr. Harry Blessing, Jr., an opportunity to show cause, if any he has, why his office should not be declared vacant for neglecting or refusing to attend two successive regular meetings".

7. A copy of said notice was received by plaintiff who appeared at said meeting with his attorney and was advised that the absences referred to were those of March 13, 1957, and April 10, 1957.

8. After discussion, the matter was tabled until the next regular or special meeting.

9. The next meeting held was a special meeting called for May 28, 1957, "for the purpose of acting on unfinished business and for the purpose of taking care of other business that should have been taken care of at the regular board meeting".

10. Said special meeting of May 28, 1957, was attended by all board members except the said John R. Snyder and at said meeting plaintiff requested disposition of the charges against him, but again no action was taken.

11. Without further notice of a hearing to plaintiff, the said board voted at its next regular meeting, held

June 12, 1957, to remove plaintiff from his office of school director.

12. All five school directors were present at said meeting. Present also were Mrs. Itha L. Sherman, secretary, and Robert B. Brugler, Esq., of counsel for the board.

13. The said John R. Snyder, Chester W. Bailor and Lee R. Fisher voted in favor of the motion to declare plaintiff's office on said board vacant while the said Harold R. Kepner voted against said motion.

14. Section 319 of the Public School Code of March 10, 1949, P. L. 30, 24 PS §3-319, provides, inter alia, as follows:

"If any person having qualified as school director shall neglect or refuse to attend two successive regular meetings, unless detained by sickness, or prevented by necessary absence from the district, or if in attendance at any meetings shall neglect or refuse to act in his official capacity as a school director, the remaining members of the board may declare his office as director vacant."

15. Plaintiff was absent from the School District of Granville Township for the regular board meetings held March 13, 1957, and April 10, 1957.

16. Plaintiff attended a public meeting in the courthouse at Lewistown on March 13, 1957, called by the Granville Township Civic Association, wherein Mr. Richard Bartholomew, Superintendent of the Lewistown School District, was the publicly announced speaker.

17. Plaintiff had received a special invitation to attend said meeting from the president and treasurer of said civic association.

18. Said meeting was scheduled to begin at 7:30 p.m., the same time at which the meeting of the School Board of Granville Township was scheduled to begin.

19. Plaintiff arrived at the courthouse for said meeting at 7:25 p.m., and after hearing the scheduled speaker's address, personally participated in the discussion that ensued.

20. The subject discussed at said courthouse meeting was a possible jointure between Lewistown and Granville Township School Districts.

21. Plaintiff had attended a similar meeting the week previous to hear Mr. W. Clay Burkholder, County Superintendent of Schools, advocate a jointure between Rothrock Joint and Granville Township School Districts.

22. The courthouse meeting of March 13, 1957, attended by plaintiff, was held in Lewistown, outside of, but contiguous to Granville Township School District.

23. On April 10, 1957, plaintiff drove his aged mother to see her daughter and plaintiff's sister who has been confined in a Harrisburg Hospital. After visiting the patient that afternoon, plaintiff and his mother visited another sister of plaintiff residing in Harrisburg who sought plaintiff's advice concerning her business course then being pursued, following which a visit was made in said city upon some aged relatives. Plaintiff returned to his new home with his mother at 11.28 p.m. that night.

### Discussion

Since there is substantially no dispute as to the facts of this case, there are but two questions for our determination, viz:

1. Was plaintiff "prevented by necessary absence from the district" from attending either or both the regular board meetings of March 10, 1957, and April 13, 1957?

2. Did plaintiff receive adequate notice of a hearing of said charges?

Since plaintiff was out of the Granville Township District when both regular meetings of the school

board were being held, the answer to our first question depends upon the meaning intended by the legislature of the word "necessary". Webster defines the adjective, "necessary" as "Essential to a desirable or projected end or condition; not to be dispensed with without loss, damage, inefficiency, or the like . . .".

It will be observed that there is a variance between these two definitions. Courts likewise have given the word various meanings. "The word 'necessary' must be considered in the connection in which it is used, as it is a word susceptible of various meanings. It may import absolute physical necessity or inevitability, or it may import that which is only convenient, useful, appropriate, suitable, proper, or conducive to the end sought. . . . The word 'necessary' has no fixed meaning or character peculiar to itself. It is flexible and relative. It is an adjective expressing degrees, and may express mere convenience or that which is indispensable or an absolute physical necessity. It may mean something which in the accomplishment of a given object cannot be dispensed with, or it may mean something reasonably useful and proper, and of greater or lesser benefit or convenience, and its force and meaning must be determined with relation to the particular object sought, and is a relative and comparative term, depending upon its application to the object sought, the character of and reasons for the convenience as public or private, and its adaptation to the public needs or public convenience, and especially is this true where it is based upon a condition or state of affairs in which the public are directly interested, and as to which a public duty is imposed upon a public instrumentality, as a railroad": Kay County Excise Board v. Atchison, T. & S. F. Ry. Co., 185 Okl. 327, 91 P. 2d 1087, 1088.

The substantial part of the above quotation was used with approval by the court in Chicago, I. & L. Ry. Co. v. Baugh, 175 Ind. 419, 94 N. E. 571, 573.

Our Supreme Court stated in Folk v. State Capital Savings & Loan Assn., 214 Pa. 529, 63 Atl. 1013, that: "When it comes to determining what is 'necessary' for the conduct of the business and transaction of the affairs for which a corporation has been chartered, it must of course be understoood that what is meant is a due and profitable prosecution of its lawful purposes; that the 'necessity' contemplated is a relative one having reference to economy, convenience, efficiency and success; and that some latitude is to be allowed to the discretion of the corporation itself in deciding what, from time to time, is or is not in that sense, necessary."

If some latitude is to be allowed to the discretion of Blessing in deciding whether or not it was a "due and profitable prosecution" of his duties and responsibilities as a school director to hear the other side of the jointure problem and participate in the public discussion that followed as against his attending the regular board meeting, it becomes very difficult to penalize him.

The word, "necessary", has been defined as importing no more than "'convenient and useful'" (County of Lancaster v. Y.W.C.A. of Lancaster, 92 Pa. Superior Ct. 514, 518), or "'reasonably convenient'" (Reeser v. Phila. & Reading Railway Co., 215 Pa. 136, 139, 64 Atl. 376), or "expedient, reasonably convenient, or useful to the public" (County Bd. of School Trustees of Macon County v. Batchelder, 7 Ill. 2d 178, 130 N. E. 2d 175), or "needful" (Parsons v. Moss, 13 N. Y. S. 2d 865, 867, 171 Misc. 828), or "*occasion for*": Pocopson Road, 16 Pa. 15.

Furthermore, somewhat similar language employed by the corresponding section of a preceding act has been held to be "highly penal in that it permits a few individuals, liable to be governed by personal feeling . . ., to oust by summary proceedings the officer duly

chosen by the electors to represent them in their school matters. The act therefore must be strictly construed, and every step in the proceedings must clearly appear to have been regular and within the authority conferred by the statute": Commonwealth ex rel. v. Gibbons, 196 Pa. 97, 100, 46 Atl. 313.

Section 319 of the Public School Code of 1949 was never intended as a means of venting personal feelings whereby one who has been duly elected by his constituents and attentive to the responsibilities of his office is removed therefrom. Blessing was attending to the duties and responsibilities of his office as school director when he attended the public meeting held in the courthouse to hear the side of the argument favoring the jointure of Lewistown and Granville Township School Districts. The previous week he had attended a similar meeting to hear the argument in favor of Granville joining with Rothrock. When Blessing elected to attend the public meeting in the courthouse, he was entitled to some latitude in discretion.

We believe that Blessing's absence from the board meeting on March 13, 1957, was prevented by necessary absence from the school district, that the remaining members of the school board abused their judgment or discretion in declaring plaintiff's seat on said board vacant and that said action was arbitrary and capricious.

It is, therefore, unnecessary for us to pass upon plaintiff's absence from the board meeting of April 10, 1957, or upon whether plaintiff was given adequate notice of a hearing.

We do not believe the costs of this case should be imposed upon the individual board members named as defendants because they serve on said board without remuneration.

We therefore make the following conclusions of law:

1. The action of the School District of Granville Township in vacating plaintiff's seat on said board and removing him therefrom was arbitrary and capricious and an abuse of judgment and discretion.

2. Plaintiff is entitled to immediate reinstatement as a member of said board with all the rights, privileges, duties and responsibilities of said office.

We accordingly make the following:

### Order

And now, June 26, 1957, defendants are hereby ordered and directed:

(a) To rescind forthwith the resolution adopted at the meeting of the School District of Granville Township held June 12, 1957, whereby plaintiff's office as school director of said district was declared vacant and;

(b) to reinstate plaintiff as a member of said school board forthwith, with all the rights, privileges, duties and responsibilities of said office.

It is further ordered and decreed that the costs of this case shall be paid by said school district.

Exception is noted to Robert B. Brugler, Esq., of Fetterolf & Brugler, counsel for defendants.